Court will now come to order in the final case of this morning, Brandt v. Shekar. It should be noted that the other member of this panel is Justice Barberis. He is not present and he will be a fully participating member. He will listen to the oral argument and will be reading the briefs. So be sure when you come to speak that you get all of your words recorded and the microphone takes down everything so that Judge Barberis will be able to hear everything you have to say. So, ready for the appellant. So note that the appellant's response to the appellant's supplemental briefing was filed. Any objection to that? I assume it was filed on time? I assume it was filed today, it was filed on time? It was filed yesterday. I think I've seen that, but I have no objection to that. I assume it's in response to our reference to Shaw v. Haas? Yes. I have not seen that, but I don't object. So, for the record, Michael Donaldson with Fox Gallivan. I'm here on behalf of the defendant, Pelleas, Dr. Preysham v. Shekar, Dr. Tim Carmody, and MidAmerica Radiology. So if it may please the court, Ms. Jones. I'll start off by conceding one point, and that is that one of the three defendants in this case is a resident of St. Clair County, and on that basis, St. Clair County is an appropriate venue for this case. But that's not what we're here for today. That's often the case in foreign non-convenience cases. And you're stealing a little bit of my thunder. For a foreign non-convenience case, which is why we're here today, there's always an assumption that there's more than one appropriate venue for a case to be heard. And that's exactly what we're dealing with in this case. And it's interesting to note that this very court, and at least one-third of this panel, sat on a case very similar to this that was issued about a month ago. The facts of this case, underlying facts of this case, are extremely strong, in my view, for the basis of a foreign non-convenience case. Do you have that case in front of you? I do. Who was the panel? The panel included Judge Overstreet, I believe, yourself, and Judge Bowling. Thank you. The case, just for reference, is Shaw v. Haas, and it's a 2019 Illinois appellate case, 5th District, 180588. I hope, for the record, that the appellee's response notes that one of the main differences was that that was a simple medical, I mean, not a medical negligence, but a simple negligence case, a shopping cart incident at Schnucks. And the case here is a medical non-practice case. And I would argue that the fact that this is a medical malpractice case makes it an even stronger argument that this is a case that belongs in Marion County and not St. Clair County. As I mentioned in the outset, Dr. Shakar does have a private residence in St. Clair County. That's why we're not here arguing of any emotion. But with all due respect to Judge Rudolph in St. Clair County, I think he sees on that particular aspect of the case and to the exclusion of other elements of this case and issues which are of an even greater importance in terms of the form non-convenience analysis. The facts of this case are pretty straightforward. It's a medical malpractice case involving a plaintiff by the name of Jamie Brandt, who is a resident of Sandoval, which is in Marion County, Illinois. From 2012 to 2015, she received routine mammogram studies at St. Mary's Hospital located in Centralia, Illinois, Marion County. Those studies were read alternatively by Dr. Shakar and Dr. Carmody, who are both employees of MidAmerica Radiology, a professional corporation which is headquartered here in Mount Vernon, Jefferson County, and services hospitals in Jefferson County, Good Sam, Marion County, St. Mary's Hospital, Madison County, St. Joseph's Hospital, and also Bonn County, Greenville Hospital. None of the defendants in this case have any connection professionally with St. Clair County. They do not provide any professional services in St. Clair County, and they do not go to any hospitals in St. Clair County. In 2015, Ms. Brandt was diagnosed with breast cancer as a result of one of those mammograms, or a suspicion of breast cancer. She eventually was worked up by a surgeon, a, ironically, Dr. Marilee Brandt, who's located in Centralia, practices at St. Mary's Hospital, so that care is provided in Marion County. She's referred to an oncologist, Dr. Maloof, who is also in St. Mary's Hospital in Marion County. During that workup, she has an additional study indicating that there's a suspicion of another lesion in the contralateral breast. The first was in the left breast, the second was in the right breast. At that point, then, she decided to take her care to Washington University in St. Louis, where she received some additional care from a breast surgeon there, Dr. Julie Margenthaler, and also got a, basically, a second opinion consult from an oncologist at Washington University, and then also consulted with a plastic surgeon for an anticipated bilateral mastectomy. Then later in her care, she decided to go back to St. Louis for care from a Dr. Zenos, who is an oncologic gynecologist who did another procedure, more so a prophylactic treatment to prevent future cancer. The purpose of that statement is to show that all of her medical care is centered in Marion County at St. Mary's Hospital, except for some treatment that was received in St. Louis at both Washington University and St. Mary's Hospital. None of her care has been received in St. Clair County. As I mentioned, the plaintiff is a Marion County resident. She's also identified three family members or friends that she anticipates may be called as witnesses in this case. All three of them are Marion County residents. They've identified no witnesses or other experts in St. Clair County. The only connection to St. Clair County is that Dr. Shakar's private residence is there. You mentioned the Shaw case and the fact that that was a case of simple negligence as opposed to medical negligence. I think what's important in this case and one of the key distinguishing factors when you go through the dozens of foreign nonconvenience cases that have been cited in the state of Illinois over the years, many of them out of this district, many of them out of the other districts in Illinois, is they balance these two issues of private interest and public interest. They use the terms convenience and justice. I would say one of the principal differences in that distinguishing factor is the importance of medical experts. So address that factor. Well, in that respect, I mean, the experts in this case are going to be the treating physicians, many of which are centered in Marion County, some of which are in St. Louis. So when you're talking about treating medical professionals... But you also have treating physicians in St. Louis, don't you? That's right. I thought I mentioned that, in St. Louis as well. Both WashU and SSM. In today's world, typically those depositions are taken by video. Very seldom do the physicians come to trial that are treating physicians. They're going to be done by video evidence depositions. So that impact, I think, is militated somewhat by the realities of present-day trial practice. Experts who are going to be retained, typically they are going to testify live, and they typically come to wherever you need them to be. Either side needs them. So I would say that's a bit of a wash. What I was going to stress, though, on the distinction there on the medical malpractice point of it, you mentioned in the Shaw case that it was a case of just general negligence. This is a specific case of professional negligence. And I think when you look at the history of these cases that address form nonconvenience, they all seem to focus on where the conduct took place that gives rise to the claim. And in this case, the conduct that is at issue in the case, the alleged medical malpractice, all took place in Marion County. In the Shaw case, the conduct that is at issue is the pushing of the shopping cart into the vestibule of the grocery store and whether or not the employee was properly trained or not. And I think the court in that case addressed that and said all the training is done. Even though Schnooks is a safetyless corporation that has stores throughout the Metro East, including St. Clair County, what was important in that case was the conduct all took place and centered in Monroe County. Similarly here, the conduct we're talking about, whether a mammogram is read properly, all took place in Marion County. And I can go through all of the private and public interest factors. We can talk about the fact that all of the witnesses that are identified by the plaintiff are in Marion County. We can talk about the point that the plaintiff, as a general rule, gets some deference in terms of their choice of venue. But the case law is also very consistent and strong about the fact that when the plaintiff is not a resident of the forum that they choose, or that the accident doesn't occur in the forum they choose, that deference is greatly reduced. It's not down to zero, but it's some. And in fact, the language in Shaw suggests, as does the language in Doughty, that if a plaintiff chooses a forum in which they are not a resident or the accident or occurrence giving rise to the claim didn't occur, there's an inference there of forum shopping. We also have a high burden to overcome with the standard of abusive discretion. Understood. So how is this an abusive discretion? Well, I think the abusive discretion here is when you read the trial court's judgment in this case, everything goes back to, well, but Dr. Shakar lives in St. Clair County. But Dr. Shakar lives in St. Clair County. The abusive discretion here is I think that the trial court did not take into consideration these other factors. The fact that under the public interest factors that talk about local disputes being resolved locally, the inference was, well, or the rationale was, well, but Dr. Shakar pays taxes in St. Clair County, so St. Clair County folks have a stake in this. Along with that, the issue of whether jurors should have to serve on cases that they don't have a real connection to. I think that the trial court ignored the fact that this is a local controversy that's centered in Marion County. It has very little to do with St. Clair County. The fact that a St. Clair County resident is involved only establishes venue. It's not his personal conduct. This is not a situation where Dr. Shakar is being sued for something he did in his home or a defect in his property at home or a contract he entered into in St. Clair County. Dr. Shakar's, the claim against Dr. Shakar is centered on his conduct in Marion County when he provides professional care to patients who come to St. Mary's Hospital in Centralia. So that's where I think the abuse of discretion came in because the... I believe it's Caseyville, which is at the northern end. It's a pretty good drive. It'd be similar... To Centralia from Caseyville every day. Correct. The issue with regard to the, getting back to the public interest factors, and I can address the private interest factors if I just feel like that's kind of a, we're just kind of ticking off boxes there, but I'd be happy to do that. We're aware of the factors and they've all been addressed by both of the briefs. Very adequately by both parties. And that was my impression. I would just emphasize the points that you wanted. So those are the points that I would like to emphasize is the fact that when I go back and I review these cases, there is this emerging theme, even in the cases that the plaintiff cites, the Moen case and the Foster case. The thing that fixes that venue in those cases that both happen to be in Madison County was there was some element of conduct that the negligence arose out of that connected that case to Madison County in both Moen and Foster. In Moen, one of the issues was the odorant that was placed in the propane gas that caused the furnace to explode. The evidence in the case was that it was actually put in the gas product in Madison County. So there was an inference that perhaps there could be another, either a third party defendant or an additional defendant. So there was, again, an element of conduct that related to potential negligence connecting that case to Madison County. In Foster, you had multiple, contrary to this case, you had multiple medical defendants, many of which had connections to Madison County. One of the physicians who lived there and had a business he ran out of Madison County that advised law firms on medical matters, asbestos cases primarily. There was also an emergency room company that had availed itself to Madison County courts several times for, I'm assuming, judging from the language of the opinion, for business reasons, either collecting fees or having contract disputes. So again, both of those, or those other cases, all have some kind of nexus or connection with the conduct that gives rise to the claim, fixing them in the county. And I think that goes back to this whole theme of local controversies resolved locally. Should local, or not, or should jurors in counties that don't have a dog in the fight, if you will, or a stake in that claim, be burdened with the cost and obligation to settle those cases? We also talk in our brief about the relative workload of the respective counties, St. Clair versus Marion County. And I think we pointed out in our brief that the caseload in St. Clair County is significantly higher than in Marion County. Now Judge Rudolph said that's not a concern of mine. The fact that the case law does indicate that the trial courts are in the best position to assess what their caseloads are. But the facts are that there are more cases filed in St. Clair County than there are in Marion County. The period of time to get cases to trial in St. Clair County, according to the Illinois Supreme Court Statistical Report for 2017, I think it's 57.8 months, almost more than four and a half years. Interestingly, Marion County, when I look at theirs, there actually were no jury trials in 2017. Which tells me that a lot of these circuits are being underutilized in terms of the resources available to them. And I think that's one of the things that the court can do, or this court can do, to help balance that workload, balance the convenience and justice factors in these cases. So that's a new public interest factor you want us to have? No, no, I think it's part of the... To spread the word for everyone? No, no, I think it goes back to, as I said, there's the convenience factors that I think are tied to the privacy, or private interest factors, and then there's the interest of justice, which are the public interest factors. If I'm a taxpayer in St. Clair County, do I want my tax dollars going to resolve the dispute between two Marion County residents? If I'm a citizen in St. Clair County and it's being called for jury duty, do I want to spend a week of my time hearing a dispute between two Marion County residents? It's not that they don't have an opportunity or a resource to have those cases heard. Those resources are there. There are competent judges, competent jurors in Marion County, and those are the folks under the balancing or the test of, are you considering the public interest factors, the justice factors? Those are the folks that should be deciding those disputes. Because those are the folks that are the neighbors and residents of the county where the dispute arose and where the conduct and issue arose. So, again, I think that the facts of this case are overwhelmingly in favor of a forum on convenience transfer from St. Clair County to Marion County. The overwhelming number of witnesses are located in Marion County. The alleged negligence is solely centered in St. Clair County. The ability to get witnesses to trial would be better in Marion County. And if I said St. Clair earlier, Marion County. You caught me. Very good. The affidavit says Czarnecki is distinguishable. What's your response to that? Czarnecki, I believe, was a railroad case. Which, again, there you have a railroad that travels, and I believe that was also an intra-jurisdictional forum on convenience case, too, if I recall correctly. But, again, a railroad, we have conduct that travels through multiple counties. It's not a situation where that conduct, even if it occurred in one county, similar to Langenhorst where, you know, conduct, negligent conduct in one county can affect people in another county because of the nature of the railroad business where railroads travel through different counties and through different states. So I think it's distinguishable that way. So, again, I think when you asked originally where Judge Rudolph, where his abuse of discretion would be in this case, my point would be that everything's centered back on, well, one of the defendants, one of the three defendants lives in St. Clair County. Therefore, everything has to fall back there. That's not what the law is. The law is you have to look at all of the facts. You have to weigh them equally. And when you look at this case objectively, this case is centered in Marion County. Most of the parties are in Marion County. And the, most importantly, the conduct giving rise to the alleged negligence is solely fixed in Marion County. Marion County has the resources to handle this case. Marion County residents should be the ones deciding what their medical care, the standard of care is and what their medical providers, how they behave, what their conduct is. They should be the ones judging whether or not they meet the standard of care. Not someone three counties over. You also have a situation where all of our defendants in this case are connected with Marion County because they either work there or have offices there. The plaintiff is in Marion County as are her three witnesses. So I think we have to answer any other questions you may have. Thank you. Thank you, Counselor. You'll have an opportunity to respond. Thank you, Your Honor. Did you state your name for the record? I did. Michael Valdez with the Foxcow. Thank you. We've got to a somewhat informal start. I was about to say good morning, but I did. It's already afternoon. Good afternoon, Your Honors. I'm Colleen Jones from the Cook Law Firm in Belleville. May it please the Court and Mr. Donaldson. I'm representing the plaintiff here today. The issue here is whether or not Judge Rudolph abused his discretion in determining whether or not to transfer this case for forum non-convenience. We all agree that venue is proper in St. Clair County. Judge Rudolph had a hearing with the parties after the briefing had taken place, which lasted nearly an hour. He then took some time and put together a 16-page order in which he very thoroughly and carefully went through every single public and private interest factor. And he was very mindful and stated in his order that he was required to do so and that he was required to consider them all equally and together and to determine whether, taken as a whole, all of those public and private interest factors strongly favored moving the case, transferring the case to another county. He found that they did not. And in reviewing the public and private interest factors, it's clear that they do not. This Court has ruled in the past in Roberts that this Court will only reverse the trial court's decision on a motion for forum non-convenience if where there's a clear case of an abuse of discretion, where the lower court failed to employ conscientious judgment in reviewing all of the evidence before it, where it ignored principles of law, and when no reasonable person would take the same view that the trial court took. That standard, that burden has not been met here by the defendant. The issue is whether or not defendant has met his burden to show that all of the private and public or the majority of the private and public interest factors strongly favor the defendant's choice of transfer forum. The plaintiff is given substantial deference in choosing their forum. That deference is somewhat lessened if they don't live in the forum and the accident didn't occur there. Those are venue issues. But it doesn't mean there's no deference. And it shouldn't, the courts have held it should never be disturbed unless there are strong issues that favor transfer. Mr. Donaldson has talked a lot about where the conduct occurred, and that should be the most important thing. Unfortunately for the defendants, none of the case law actually says that. The case law all says very clearly we have to consider everything. Where the conduct occurred is actually a venue issue. The plaintiff can only bring suit where the conduct occurred or where the defendant can be found. And that's what was done here. The lawsuit was brought where the defendant can be found. The issues here are, is the plaintiff's choice of forum inconvenient, more inconvenient than the place where the defendant is requesting that it be transferred? And in addition, is the transfer forum more convenient for all parties? I understand that the defendant wants the case to be over there. And we talk about the issue of forum shopping all the time in these cases. But this motion wouldn't have been brought and we wouldn't be here if the defendant didn't consider that a more favorable forum. The private and public interest factors are clearly not favoring the defendant's transfer. The convenience of the parties is a neutral argument. One of the defendants lives in St. Clair County. The plaintiff lives in Marion County. The other doctor lives in Iowa. And the corporate defendant doesn't, isn't in any of the mentioned counties. They're in various counties, but their main office, their registered agent is in Jefferson County. The corporate doesn't, the corporate entity doesn't normally send a representative to the trial other than the doctors. They're saying that it's inconvenient for the doctors because they work in Marion County. But of course it's hard for Dr. Chicago to argue that it's going to be inconvenient for him to get out of bed in the morning of trial and drive much further to go to Marion County for trial than to stay in St. Clair County, which is his home. And of course Dr. Carmody will have to pass St. Clair County on his way to Marion County from Iowa. The plaintiff's, whether, the defendant is not allowed to argue whether the plaintiff's chosen forum is inconvenient to the plaintiff. So we look at the ease of access to evidence. You know, this is a medical negligence case, as you brought up. One of the big items of evidence is always the medical records. But of course we get those on a disc after we send a letter asking for them. They're not housed in the attorney's offices. The defendant has made an issue of where the plaintiff's witnesses reside. When they sent discovery and asked who are some people who would know about your injury and your conditions and the facts of your case, of course no one really knows about the medical facts of the case, no outsider, but there are friends and family who can talk about what she was like before and after. The plaintiff has not made any decision on which of any of those witnesses would be called to trial, but we can assume that the plaintiff's witnesses will not find it inconvenient to come and help her or testify on her behalf regardless of where she asks them to do so. The other witnesses are treating doctors. She had her tests in Marion County. That's the subject of the lawsuit. She then initially sought help with an oncologist in Marion County, but immediately transferred all of her major care to WashU, where she had many surgeries. She had a double mastectomy. She had reconstruction surgeries. She had to have a prophylactic hysterectomy. Her main oncologist overseeing all of her care is at WashU. She opted to return to Marion County for some follow-up chemo and radiation, but no major doctor is from there. It's not likely that their depositions would be taken or that they would be asked to come to trial. The treating doctors whose evidence will be most necessary are in St. Louis. It would be impossible to get them to agree to come to Marion County. It would be easier to get them to agree to cross the river and come to St. Clair County. Oftentimes, these depots are taken by videotaped evidence deposition. It's just the practicality of that. But we do try to get them to come in live because we think it's better. And given the opportunity to be a little closer, we'd have a better chance. We also have to look at the cost. We look at the cost of getting the experts out to Marion County. And I will tell you as a practical experience, they all come through Lambert. Plaintiff can't find experts in state to testify against local doctors. We have to bring them in from out of town. And if I have to then get them to a farther away county and back, you're paying for two days of time instead of one when you can get them out and back on the same day. And this court has found in Moen that the courts should not thwart the party's ability to bring in experts to testify on their behalf because of costs. That doubles the cost to have them stay an extra day. We look at whether or not, in a medical negligence case, whether or not a site inspection is necessary. It simply isn't. In medical negligence cases, there's no reason why we would ever go look at the mammogram machine to see how it works. That comes up in cases, as you brought up in Shaw, in a simple negligence case. You might be interested in what an intersection looks like or the floor of a store or the lighting in a particular restaurant. But here those issues will not come up. So in all of the practical issues that will be before the court, that were before the court, to determine what, if any, reason there was to transfer, what we looked at, what he looked at, was that indeed it would be easier for Dr. Shakar to come to St. Clair County. We can't look at where the plaintiff comes from and Dr. Carmody's living in Iowa. The plaintiff's choice actually favors the plaintiff. One of those factors that favors the plaintiff. Correct. That's correct, Your Honor. And in the public factors, we talk about congestion. I just want to address that for a minute because we talk about, everyone assumes that St. Clair County is much more congested than the smaller counties. And yes, there are more cases, but more are disposed of. And I just wanted to highlight some numbers in the annual review of Illinois courts, the latest numbers when we wrote our brief were from 2016, but there were 254 cases, over 50,000, filed in St. Clair County, but 399 were disposed of. Whereas that same year in Marion County, only 34 cases were filed, but only one was disposed of. Judge Rudolph made it very clear, and he makes it very clear to all of us every week when we go for our status conferences, I can try these cases anytime you want. If anybody wants a trial sitting, come up here and ask me. We also have five or six circuit judges who can try a case in St. Clair County, and it's never a problem to get a case out to trial. We also have internet access in all of the courtrooms. We have all of the technology that has been provided with the ELMOs and the projectors and a way to show videos and screens and everything that we need that makes it easier to present for both of us, to present our client's case. St. Clair County jurors are used to longer, sophisticated cases, and not that in Marion County the jurors aren't capable of deciding, but it certainly is a convenience to the parties to be able to present their evidence in a county where you have the technology. Just for the record, most of the members of this court were in St. Clair County Courthouse just last week for Judge Wharton's swearing-in ceremony, so we're acquainted with the court. You're acquainted, thank you, and with the judges. I'm sure, I know, I'm stating things more for the record than from your personal edification. We looked also at jury duty, whether or not it's fair to ask the jury to decide. And here we have a plaintiff who lives in Marion County, we have a defendant who lives in St. Clair County. That's a neutral issue. The issue of whether or not it's a local controversy. This court has looked at that issue before in the past and held that, again, here we have a Marion versus St. Clair plaintiff versus defendant issue, but the defendant lives in the county, and the county has an interest in the negligence or the behavior of its citizens. He pays taxes there, he avails himself of all of the privileges of the county until it becomes more convenient to avail himself of the privileges of another county. There's case law, and I know that the court is aware of it. It's a Med-Mal case. It's the most similar case from this district. It's a Med-Mal case, and that case also did not, the occurrence did not occur in the county in which the plaintiff had filed. But in that case, they brought up a very important point, and that was that the defendants are entitled to file affidavits and state why this is inconvenient to them. In that court, the case, in that case, the court found that it was, it was conclusory to just simply state it's inconvenient to me. In our case, they didn't even state it was inconvenient. They just said we work in Marion County, but they didn't say that it was inconvenient. The affidavits didn't say why it was inconvenient, why it would be difficult for Dr. Chicago to leave his home county to travel an hour and a half to another county. In Moen, it was a products case, again, a complicated negligence case, and that was the case in which the court discussed among many things where the incident did not occur in the county chosen, that it would be inappropriate to thwart the party's ability to bring in live witnesses due to costs, due to other issues. You've got the Shaw case that just came out after we briefed, and you've given permission for us to consider that case. That case was very, very localized. In that case, we had almost everything happening in Monroe County. The plaintiff tried to allege she worked in St. Clair County. It turned out not to be the case. She had one treating doctor up in St. Clair County. What happened was it was a case against Schnucks, and they simply sued Schnucks in St. Clair County because there's a Schnucks store there. There's a Schnucks store in many, many counties. It's a Missouri corporation. But that case, not only was it extremely localized and that every other witness and every other thing happened in Monroe County, but it was also a distinguishing between a corporate defendant and an individual defendant. And a corporate defendant might have many places where they could be found all over the state, which could require the defendant to travel hundreds of miles from where the witnesses were and that sort of thing. But an individual only has one home. Dr. Shakar only has one home. Regardless of where he works, he lives in St. Clair County. This Court has looked at that issue in the past and held in favor of keeping the case in the county chosen by plaintiff where it was indeed the home of one of the defendants. This, again, clearly the Court is required by the Supreme Court and by its own prior opinions to find that there was an abuse of discretion by the trial court. And when you read the trial court's order, and I'm certain you've done that, it's very, very clear that he was taking great pains to look at each of these individually. The defendant would have you believe that the only issue was whether or not the conduct occurred there and that Dr. Shakar lived there and that he kept drawing back into whether Dr. Shakar lived there. But the fact is when you look at these forum cases, the facts all fall under several of those categories and they all have to be mentioned if you're going to consider them thoroughly. So whether Dr. Shakar lives there has to do with the convenience for him. It has to do with where he pays his taxes. It has to do with whether it's localized or not. It falls under several categories and if he didn't mention it, that would have been an issue. The Elling case, which is a Supreme Court case, has stated that in the absence of an abuse of discretion, a ruling will not be disturbed, that the Court cannot substitute its judgment for that of the trial court, and the test is whether factors viewed, all of the factors viewed in their totality, strongly favor a transfer to the defendant's chosen forum. Here they simply do not. Most of the factors are neutral. This case is not localized. We have a doctor in St. Clair County. We have a plaintiff in Marion County. Everything else is scattered everywhere else. The other defendants live somewhere else. Some of the witnesses live there. Some of the doctors live there. Most of the treatment is in St. Louis. None of the experts will be from Marion County. None of the factors here strongly favor transferring to Marion County, let alone all of the factors. So there was no abuse of discretion. Defendant has not met its burden of showing this Court that St. Clair County is not only inconvenient to the defendant, which they didn't even allege in their affidavits, but that Marion County is more convenient to all of the parties, not just to the defendant, and they're not entitled to argue on what's convenient for the plaintiff. She's entitled to discretion with regard to her choice of venue. Your Honors, thank you very much. I see I have time left, but unless you have questions. We never argue with you. Sitting down, are we? I will do so, but thank you. Thank you, Counsel. Reba. Thank you, Judge. And it's not fair that I have to follow Colleen. She's always going to come off looking a lot better than I will. Sorry, Colleen. I'm behind the equal to start with. A couple quick things here. The conduct. Conduct does matter, and I refer to the Court's recent opinion in Shaw, paragraph 32, to reiterate Shaw resides in Monroe County, and all relevant conduct alleged in her complaint occurred there, including not only the incident itself, but also the training, hiring, and firing of Schnook's employees that is conducted on an individual basis. And then later in that same paragraph, any business transactions, this is talking about the connection to St. Clair County, any business transactions there are unrelated to the incident case and insignificant for the purposes of form non-convenience, and that's a reference back to Sarnacki. So, and then also, and I mentioned in Mullen, again, this was a case involving an exploding stove in Jersey County, and in finding that the case could be probably venued in Madison County, the Court says, the situs of the negligence, if any, however, may not have occurred in Jersey County. Illinois Valley stated in the discovery that it does not mix an odorant with the propane, but that it buys the propane already mixed with the odorant from a supplier doing business at CBI, whose principals are located in Madison County. So, when it's asserted that conduct doesn't matter, I would take issue with that. I think this Court, on at least two occasions and many other occasions, has said the conduct does matter where it occurred. Ms. Jones indicated that if Dr. Carmody, talking about the issue of convenience, Dr. Carmody is true, does reside in Clive, Iowa, but he has an arrangement where he comes down and he works the various Mid-America radiology locations at different hospitals throughout, I guess we'd call this Mid-Southern Illinois. And he actually stays in Jefferson County here in Mount Vernon. He's got an apartment here where he stays. So, I think that's a little disingenuous to say that it wouldn't be just as convenient for him to just travel through St. Louis and go to St. Clair County. He's actually based locally here in Mount Vernon, and I think the Court can take judicial notice that it's closer to go from Mount Vernon to Salem, where the Marion County Courthouse is, than it would be to go to Belvin, where the St. Clair County Courthouse is. On the issue of convenience during trial, granted Dr. Chakar is, his home is in Caseyville, which is in St. Clair County. But you're also talking about two of the 11 radiologists that work for Mid-America Radiology. I've defended many medical malpractice cases, and I can tell you, oftentimes doctors, even during trial, have to do doctor  These cases usually take a week or more to try, so if they're not actively seeing patients, they are going back to their offices and looking at reports or ordering things. In the case of radiologists, they have the ability to go back into the hospital and read films, and I can suspect that's very well what may occur in this case. So if this case were tried in Belvin and St. Clair County, it would be a burden on these defendants to have to travel, to go to trial in St. Clair County and then travel back to St. Mary's Hospital to read cases. That would be a burden placed on the defendants that would be inconvenient for a trial in St. Clair County. It's also incorrect that all of Ms. Brandt's subsequent medical care has been transferred to St. Louis. The facts of the case are she was initially treated here by Dr. Brandt and Dr. Malouf, did go to St. Louis for treatment with Dr. Martinfeller, but the consultation with Dr. Malouf at St. Mary's Hospital. Also, she received her chemotherapy and her radiation oncology at St. Mary's Hospital, and my understanding from her deposition is she's still treated with those folks in Marion County. So she's not treating actively in St. Louis. Indicated as a private beaten to death, there is one of the defendants who resides in St. Clair County, but the other two are situated here in Jefferson County. The other is an employee who has a apartment that he stays in frequently here in Jefferson County. It's not that he's driving back and forth from Clio every day. He's more a resident of Jefferson County during the time he's working than not. Certainly not in St. Clair County. Also, to bring up a distinction in the Shaw case, all of the defendants weren't in Monroe County in that case. If you recall, the actual defendant in the case, his last name is Haas, Matt Haas, I believe, was actually a resident of Randolph County, which is the next county south of Monroe County. He was not a St. Clair County resident. So, again, I appreciate your patience with me. I trust the court will make the right decision in this case, and on behalf of my clients, thank you again. Thank you, counsel. The court will take the matter under advisement. Issue is received in due course to be in recess until 145.